WILLIAM LADU v. HARLOW A. LADU AND ADA HYDREN.

*Bill to cancel deed—Fraud.*

Complainant filed a bill to set aside a deed of his farm which he
    had executed and delivered to his son; and upon a review of
    the evidence it is held that the only conditions imposed by
    complainant upon the delivery of the deed were the execution
    of a life-lease to complainant, and of a mortgage for $1,000 to
    defendant's sister, which conditions have been performed.

Appeal from Shiawassee. (Newton, J.) Argued January 8, 1891. Decided February 6, 1891.

Bill to set aside a deed and mortgage. Defendant
Ladu appeals. Decree reversed, and bill dismissed. The
facts are stated in the opinion.

*Hugh McCurdy,* for complainant.

*Lyon & Hackleman,* for appellant.

[Briefs are confined to a discussion of the evidence.—
REPORTER.]

McGRATH, J. Complainant files a bill to set aside a
deed given in 1887 by complainant, the father, to Har-
low A. Ladu, the son, and a mortgage given by the son
to his sister Ada Hydren.

Complainant avers that he is 67 years of age; that he
was the owner of this farm, worth $3,500; that in 1885
his wife died; that he has three children, Harlow A.
Ladu, Prudah Bentley, and Ada Hydren; that, in the
fall of 1886, his son, with his wife and three children,
came to live with complainant, and in course of time
began to importune complainant to give him a deed of
the farm, promising that—

"If you will let me have it [the farm] I will live with you, and work the farm, and will support you in your old age, and will fix up the fences and slick up the farm nice, and give a mortgage on the farm to Ada for $1,000, and, if you ever want the farm back, I will deed it back to you, and if you never want it back, Ada will have a thousand dollars."

That being fully overpersuaded by the son, and believing that he would do as he agreed, he yielded to his promises and entreaties, and deeded the farm to him; that, when defendant Ladu received the deed, he did not execute the mortgage until October, 1887; that no consideration was paid for the deed or mortgage, and defendant Ladu has not paid any part of the mortgage; that in October, 1887, the son executed and delivered to complainant what purports to be a life-lease of said farm, which was done further to cloud complainant's title and defraud him out of the farm; that the defendant Harlow A. Ladu failed to keep and perform the conditions upon which he received the deed, and refuses to redeed the farm as he agreed to do; that defendant Ada Hydren, offers to release her mortgage, if her brother will redeed the farm.

Defendant Harlow A. Ladu admits the execution of the deed to him; denies that the conditions named were imposed, other than that he was to execute the mortgage to his sister; denies that he importuned complainant to give the deed, or that he made the alleged promises; avers that he executed the mortgage; that the execution of the deed to him was a part of a general plan devised by complainant to distribute his property to his children; that his father owned not only this farm, but a smaller farm of 35 acres, and a lot and store in Williamston; that the deed to defendant was voluntary, and, at the time of its execution, complainant executed a deed of the other farm to Prudah Bentley, and a deed of the

Williamston property to complainant's granddaughter, and that the mortgage to the defendant Ada Hydren was her portion; and denies all allegations of fraud or of default.

The testimony, as to the conditions upon which the deed to defendant was given, is conflicting, as is that with reference to defendant's willingness to remain upon the farm. It appears that complainant was 65 years of age at the time of the execution of the deed; that defendant Ladu was not strong physically; that he lived upon the farm until he was 22 years of age, and then married, and for three years after that continued to live upon the farm with his wife; that prior to his mother's death, he learned the trade of harness-making, and, for some years prior to his mother's death, he followed that business; that, his health failing, he gave up that business, and at the time of his mother's death, in 1885, he was with his wife and children traveling, giving concerts; that in 1886 he made a visit to his father's house, where his father, his sister Ada (about to be married), and his niece were living; that his father urged him to remain upon the farm, and he did so until the fall of 1888. The son testifies that, some time during the spring or summer of 1887, his father told him that he had conveyed to him the farm, and, in the fall of the same year, the father told him to go to one Pulver's, execute the life-lease and mortgage, and get his deed, and have it recorded, which he did; that he continued to live on the farm, his father managing and conducting it, until the fall of 1888; that in the fall of 1888 it was noised about that the father contemplated remarriage; that the son spoke to the father about it, and the father replied that he knew his own business; that from that time the father began to grow secretive, sullen, and morose, moved into a separate part of the house with his granddaughter, and ordered his meals there; that the son, knowing that his father was

about to marry, and believing that he (the son) and his family were in the way, constructed one of his traveling cars, moved into it, remaining there all winter, continuing to do the fall work on the farm; that soon afterwards his father married; that, after his wife came, the son's wife and the children were accused of stealing little things from the house, and in the spring defendant left the farm.

One James M. Pulver is called as a witness, and says that he made out the deed, the life-lease, and mortgage at the instance and by direction of complainant; that complainant told witness at that time that he was not in good health, and wanted to distribute his property; that, at the same time, witness drafted other deeds to the other children; that the deed running to Harlow remained as originally prepared; that all the papers remained in witness' hands for some time, and the other papers were afterwards changed, and those originally prepared were destroyed.

Daniel Hydren was called by complainant, and says that in November, 1887, Harlow told him that he had executed a mortgage to Ada, and that his father had it; that the witness told Ada about it; and afterwards, in 1889, complainant, in the presence of witness, gave the mortgage to Ada.

It is quite clear from this testimony that, although the deed was executed in February, it was not delivered until the fall, and was recorded in November; that the mortgage was in complainant's hands from the time of its execution, in October, 1887, until some time in 1889; that the life-lease was received by the father from the son in the fall of 1887, was retained by complainant, and was in his possession when the bill here was filed; that the control of the farm and its management were never yielded up by the father to the son; that, for nearly a

year after the delivery of the life-lease and mortgage to the father, the relations between father and son continued to be the most cordial, as they had always been and were up to the contemplated remarriage of the father, which took place in the fall of 1888.

These undisputed facts are entirely inconsistent with complainant's theory that the condition of the gift of the farm to the son was the support of the father by the son, or that the mortgage was not executed as agreed, or that the life-lease was an after-thought of the son's. The relations between father and son, and between the father and the son's wife and family, had always been unusually pleasant and cordial, and it was the undoubted intention of both parties, at the time of the delivery of the deed, that the son should remain upon the farm, and that all should live together in the old farm home as one family; but, in view of the father's contemplated marriage, the son and his family were in the way, and the son gave way to the father's evident desire, manifested not openly and frankly, as it should have been, but by changed demeanor and unpleasant conduct. We find, therefore, that the only conditions imposed by the father upon the delivery of the deed were the execution of the life-lease and mortgage, and that those conditions have been performed.

The decree of the court below is therefore set aside, and the bill of complaint dismissed, with costs of both courts to defendant.

The other Justices concurred.